UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAY LENG CHAN, MICHELE CHAN, JOHNNY SHIH, and SUNNY WU, individually and on behalf of others similarly situated,

                    Plaintiffs,

          -against-

NEO SUSHI STUDIO INC. and VINH C. LY,

                  Defendants.

Case No. 12-cv-4505 (KBF)

---

NEO SUSHI STUDIO INC. and VINH C. LY,

              Third-Party Plaintiffs,

          -against-

KWO SHIN CHANG and STEVEN WONG,

              Third-Party Defendants.

---

## **PLAINTIFFS MAY LENG CHAN AND MICHELE CHAN'S TRIAL BRIEF**

Respectfully submitted,

Liane Fisher, Esq.
Michael Taubenfeld, Esq.
Serrins Fisher LLP
*Attorneys for Plaintiffs*
233 Broadway, Suite 2340
New York, New York 10279
(212) 571-0700

I.      STATEMENT OF FACTS

A.  PLAINTIFFS' CAUSES OF ACTION

Plaintiffs[1] May Leng Chan and Michele Chan are a former waitress and cashier, respectively, employed by Neo Sushi Studio, Inc. ("Neo Sushi") and Vinh C. Ly ("Ly").  May and Michele Chan typically worked more than 40 hours a week but were not paid for each of the hours they worked, including their overtime hours. In the operative Second Amended Complaint Plaintiffs brought the following ten (10) causes of action:

(1)     unpaid minimum wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a)(1);

(2)     unpaid overtime wages under the FLSA, 29 U.S.C. § 207, 29 C.F.R. § 778.105;

(3)     unpaid minimum wages under the New York Labor Law ("NYLL") § 653;

(4)     unpaid overtime wages under the NYLL, 12 NYCRR § 146–1.4;

(5)     failure to comply with NYLL §195;

(6)     failure to timely pay wages under NYLL § 191;

(7)     breach of contract;

(8)     misappropriation of tips under NYLL §196-a;

(9)     retaliation under NYLL § 215; and

(10)    retaliation under FLSA, 29 U.S.C. § 215.

Plaintiffs are not proceeding with their breach of contract claim (Cause of Action #7) or their retaliation claim under the FLSA (Cause of Action #7).  Plaintiff May Leng Chan is not proceeding with her failure to pay timely wages claim under NYLL § 191 (Cause of Action

_____

[1] Plaintiffs Sunny Wu and Johnny Shih still remain in this case.  They failed to comply with the Court's May 28, 2013 order (DE 66) that they show cause by June 4, 2013 as to why their claims should not be dismissed with prejudice.  Accordingly, "Plaintiffs" as used in this brief refers only to May Leng Chan and Michele Chan.

#5) and Plaintiff Michele Chan is not proceeding with her retaliation claim under the NYLL §
215 (Cause of Action #9).

## B.  BACKGROUND OF NEOSUSHI AND THE PARTIES

Defendant Ly opened Neo Sushi Studio with the assistance of Third-Party
Defendants Kwo Shin Chang ("Chang") and Steven Wong ("Wong").  Defendant Ly and the
Third-Party Defendants previously worked together in other restaurants including Two Steak and
Sushi Den in 2010.  Plaintiff Michele Chan is Third-Party Defendant Chang's girlfriend and they
have a child together.  Plaintiff May Chan is Plaintiff Michele Chan's sister.  Plaintiffs Michele
Chan and May Chan also worked with Defendant Ly before Neo Sushi at other restaurants.

In early 2011, Defendant Ly began the process of opening his own restaurant and
asked the Third-Party Defendants for assistance.  Shortly thereafter, Third-Party Defendant
Chang assisted Defendant Ly in finding a location for Neo Sushi.  Defendant Ly paid $50,000 to
purchase the lease for Neo Sushi from a restaurant located in the Upper East Side of Manhattan.
Over the next few months, Defendant Ly met with an accountant and attorney in order to set up a
corporate name for Neo Sushi, to obtain a liquor license and health permit, and to obtain
worker's compensation and premises liability insurance policies.  Defendant Ly was the
President and sole officer of Neo Sushi. He signed the lease, liquor license application, health
permit application and insurance policies.

Around the same time, Defendant Ly opened up a corporate checking account for
Neo Sushi.  Defendant Ly was the sole signatory on the checking account and was the only
person who could sign checks from the account or withdraw money.  Defendant Ly also opened
accounts for Neo Sushi with various utilities (such as Verizon and Con Edison), vendors and
suppliers and applies for a corporate credit card in his name.

### C.  HIRING OF PLAINTIFFS AND OTHER EMPLOYEES

Defendant Ly also asked the Third-Party Defendants to work at Neo Sushi. Defendant Ly hired Chang to be a manager of front-of-the-house employees and kitchen staff and Wong to be head sushi chef and to supervise other sushi chefs.  Defendant Ly agreed to pay the Third-Party Defendants a weekly salary and gave each of them keys to the restaurant.

Shortly thereafter, Defendant Ly and the Third-Party Defendants began to hire employees.  Defendant Ly contacted Plaintiff Michele Chan, who he met many years earlier and with whom he previously worked at other restaurants (including Two Steak and Sushi Den). Defendant Ly asked her to work for him at Neo Sushi.  Plaintiff Michele Chan spoke to Chang about working at Neo Sushi, and Chang advised her that Defendant Ly was willing to pay her $2,800 per month to be a cashier and perform other duties.   Defendant Ly also directed Chang to offer a job as a waitress to Plaintiff May Chan, Plaintiff Michele Chan's sister who had also worked at Two Steak and Sushi Den.  Chang advised May Chan that Defendant Ly would pay her $4.90 an hour plus tips.

With Defendant Ly's approval, the Third-Party Defendants hired other employees, including Johnny Shih and Sunny Wu.  These employees, along with Plaintiffs, began cleaning up the restaurant on July 25, 2011 and preparing for its grand opening on August 3, 2011.  The employees, including Plaintiffs, worked from 11:00 am until 7:00 pm until the restaurant opened.  Defendant Ly failed to pay Plaintiffs anything for this work.

### D.  NEO SUSHI'S OPENING AND OPERATION

On August 3, 2011, Neo Sushi, a restaurant with maximum capacity of 32 people, opened for business.  Neo Sushi employed Plaintiff May Chan as a waitress and Plaintiff Michele Chan as a cashier and other employees including kitchen staff and sushi chefs.

4

Defendant Ly and the Third-Party Defendants also worked in the restaurant each day and Chang performed various duties, including waiting on tables when necessary.

a.   <u>Neo Sushi's Hours of Operation and Plaintiffs' Schedule</u>

Neo-Sushi was open six (6) days a week, from Monday through Saturday. The hours of operation were 5:00 p.m. through 11:00 p.m., Monday through Wednesday, and 5:00 p.m. through 12:00 a.m., Thursday through Saturday. The employees were directed to appear for work no later than 3:00 p.m. each day in order to prepare the restaurant for dinner service. Because Defendants employed a small workforce, each employee typically worked six (6) days each week from approximately 3:00 p.m. until closing.

Plaintiff Michele Chan worked all six (6) days each week as a cashier and performed duties including swiping customer credit cards, taking cash and greeting customers. Michele Chan often arrived at the restaurant before 3:00 p.m. and always stayed at the restaurant until closing. Although Neo Sushi had an official closing time, the restaurant usually remained open until the last customer finished his or her meal and left. As a result, Michele Chan usually began work before 3:00 pm and usually finished work after 11:00 p.m. on Monday through Wednesday and after 12:00 pm on Thursday through Saturday. Plaintiff Michele Chan continued working this schedule until October 6, 2013 when she quit her employment to begin maternity leave.

Beginning on August 3, 2011, Plaintiff May Chan worked as a waitress but also swiped customer credit cards when Plaintiff Michele Chan was busy or unavailable and almost exclusively swiped customer credit cards after October 6, 2011. Plaintiff May Chan worked the same schedule and the same hours as Michele Chan. On and about August 20, 2011, Defendant Ly advised Plaintiff May Chan that she did not need to work each Monday and directed her not

to work on August 22, 2011.  Plaintiff May Chan's schedule remained the same Tuesday through Saturday.  Plaintiff May Chan worked on August 29, 2011 and one Monday in the month of September.  She worked four (4) out of five (5) Mondays in October and approximately two (2) Mondays in November.  Plaintiff May Chan continued to work this schedule until Defendant Ly terminated her on December 5, 2011.

b.  Neo Sushi's Unlawful Pay Practices

a.  Violation of Tax and Recordkeeping Laws

At the outset, Neo Sushi failed to comply with state and federal wage and tax laws.  Defendant Ly paid employees in cash and did not withhold taxes from their pay. Defendant Ly did not provide employees with a NYLL § 195(1) notice within ten business days of hire, failing to advise employees of their rates of pay and pay dates. He also failed to provide wage statements that included rates of pay and hours worked, in contravention of NYLL § 195(1).

Even more egregiously, Defendant Ly failed to keep proper records of Plaintiffs and other employees' work.  Particularly, Defendant Ly failed to keep track of the employees' hours and filled out or instructed others to fill out timesheets with incorrect times.[2]  Plaintiff Ly also never kept track of any records of the payments he made to Plaintiffs and others or the tips Plaintiff May Chan earned.

b.  Violation of Minimum Wage and Overtime Laws

Most problematic, Defendant Ly failed to pay Plaintiffs and other employees properly under the FLSA and NYLL.  Plaintiffs regularly worked more than forty (40) hours a week.  Because Defendant Ly was the sole signatory on the checking account, he controlled

---

[2] Defendant Ly testified at his deposition that he never filled out the timesheets and that he has no idea whether the information contained therein is accurate.

whether and when employees would be paid.   Defendant Ly never compensated Plaintiff

Michele Chan at all.  Defendant Ly only paid Plaintiff May Chan a total of $664.70 for her entire

period of employment, effectively paying her less than $1 per hour.

c.   <u>Misappropriation of Tips</u>

Defendant Ly also misappropriated Plaintiff May Chan's tips.  Plaintiff May Chan

received cash tips from patrons, which Defendant Ly required her to pool with him and the

Third-Party Defendants.  Defendant Ly also forcibly pooled credit card tips that Plaintiff May

Chan received. A portion of Plaintiff May Chan's tips were then provided to Third-Party

Defendant Wong and further evenly divided between Chang, Ly, and May Chan.

### E. DEFENDANT LY'S RETALIATION AND THE CLOSING OF NEO SUSHI

Plaintiffs (and other employees) repeatedly complained about not being paid to

Defendant Ly and Third-Party Defendants.  Having not received her wages since she began

employment on July 25, 2011, Plaintiff May Chan complained to Third-Party Defendant Chang

in August and September.  In August and September, Plaintiff Michele Chan spoke to Third-

Party Defendant Chang and Defendant Ly about not being paid.  As time went on, other

employees complained on a weekly basis to Third-Party Defendant Chang who relayed the

complaints to Defendant Ly.  The Third-Party Defendants also complained to Defendant Ly

about not being paid.

As a result of these complaints, Defendant Ly closed down Neo Sushi on

December 5, 2011, changed the locks and fired all employees.  Plaintiff May Chan tried to

contact Defendant Ly to ask him when she could return to work, but he refused to return her

calls.  Defendant Ly also refused to allow Third-Party Defendants Chang and Wong to enter Neo

Sushi's premises and refused to allow Wong to retrieve his sushi knife.

Plaintiff May Chan continued her attempts to contact Defendant Ly to no avail. Plaintiff May Chan made diligent efforts to find work and was first successful in April 2012. She worked from April 2012 until October 2012 and then again from February 2013 until present.

## II.    ARGUMENT

### A.  DEFENDANT LY IS PLAINTIFFS' EMPLOYER

  a. <u>Defendant Ly's Testimony Will Conclusively Establish that He had Operational Control Over Neo Sushi</u>

    1. **<u>Standard for Individual Employer under the FLSA and NYLL</u>**

Plaintiffs, Defendant Ly, and Third-Party Defendants' testimony will establish that Defendant Ly was Plaintiffs' employer under the FLSA and NYLL.[3]  Under the FLSA, courts apply the "economic realities" test to determine whether an individual owner of a corporation is an employer.  In determining whether an individual is an employer courts look at "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 139 (2d Cir. 1999).  However, because "[t]he overarching concern is whether the alleged employer possessed the power to control the workers in question...." courts do not apply these factors mechanistically but instead review them along with other factors to determine whether the individual is an employer.  <u>Spicer v. Pier Sixty LLC</u>, 269 F.R.D. 321, 335 (S.D.N.Y. 2010)(Sand, J.).

---

[3] The standard for an individual to be an employer is identical under the FLSA and NYLL. <u>Paz v. Piedra</u>, 09 CIV. 03977 LAK, 2012 WL 121103, at *5 (S.D.N.Y. Jan. 12, 2012)(Gorenstein, M.J.)(standard for employer under the NYLL same as under FLSA).

Courts find that an officer of a corporation is an employer when he "has overall operational control of the corporation, possess an ownership interest in it, control significant functions of the business *or* determine the employees' salaries and makes hiring decisions . . . ." Torres v. Gristede's Operating Corp., 04 CIV. 3316 PAC, 2011 WL 4571792, at *3 (S.D.N.Y. September 9, 2011)(Crotty, J.)(emphasis in original);  Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002)(stating that overwhelming weight of authority finds that an individual who has operational control over an enterprise is jointly and severally liable).

## 2.  **Defendant Ly's Operational Control Over Neo Sushi**

Defendant Ly had operational control over Neo Sushi.  Defendant Ly was the sole owner and officer of Neo-Sushi.  Defendant Ly's involvement with Neo Sushi was not that of a "paper owner," as Defendants allege.  Defendant Ly was the sole signatory on the bank account and only holder of the company credit card and effectively controlled the "power of the purse." Only Defendant Ly could withdraw money or sign checks from Neo Sushi's bank account. Torres, 04 CIV. 3316 PAC, 2011 WL 4571792, at *3 (individual owner's control over banking matters relevant to his employer status).  Only he paid Neo Sushi's bills, including the monthly rent, utility bills, insurance premiums, phone and internet bills, accountant and attorney invoices, advertising bills and bills to suppliers.  Herman, 172 F.3d at 140 (2d Cir. 1999)(noting that the individual's ability to financially control the company was significant).  Defendant Ly's unfettered and sole control over Neo Sushi's finances qualifies as operational control.

Defendant Ly paid employees' wages and tips, either by withdrawing the cash to pay the wages or signing paychecks.  The authority to sign paychecks is a "significant factor" in determining whether the economic reality test is satisfied.  Torres, 04 CIV. 3316 PAC, 2011 WL

4571792, at *3.  While Defendant Ly will likely testify at trial that he did not keep track of employees' hours or wages and simply paid them in accordance with the Third-Party Defendants' instructions, "an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable" Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011).  Defendant Ly cannot pretend he was acting as a rubber stamp.

Defendant Ly also exercised control over Neo Sushi in other ways.  He signed Neo Sushi's lease, premises insurance policy, liquor license application and health permit application.  He paid $50,000 to purchase the lease for Neo Sushi.  He also was involved in the day-to-day operation of Neo Sushi.  By his own admission, Defendant Ly worked in the restaurant almost every day and calculated at the end of each day how much the restaurant earned.  Defendant Ly also regularly met with Neo Sushi's accountant to calculate and pay sales tax, set up a credit card payment system with the bank, and regularly withdrew money to pay bills.  He also claims that he frequently worked as a waiter in Neo Sushi.  Defendant Ly's day-to-day involvement with Neo Sushi establishes that he had operational control over the restaurant and was Plaintiffs' employer.  Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 368 (E.D.N.Y. 2009)(holding that individual owner was a joint employer because he sometimes gave employees instructions, oversaw the progress of the company's work, and was intimately involved in most decisions made by the company); Torres, 04 CIV. 3316 PAC, 2011 WL 4571792 (owner was joint employer because he signed payroll checks, controlled business finances, and had the authority to close stores).

Finally, Defendant Ly had and exercised the sole authority to close Neo Sushi. Defendant Ly concedes that he unilaterally changed the locks to Neo Sushi, thereby preventing the Third-Party Defendants from entering the restaurant and terminating all employees.  In

addition, as the sole owner of Neo Sushi and only individual whose name was on Neo Sushi's bank account, lease and liquor license, Defendant Ly had the uncontroverted power to close Neo Sushi, which is a strong measure of operational control. Torres, 04 CIV. 3316 PAC, 2011 WL 4571792 (owner was joint employer in part because he had the authority to close stores); Hernandez v. La Cazuela de Mari Rest., Inc., 538 F. Supp. 2d 528, 535 (E.D.N.Y. 2007)(owners were managers of restaurant and closed the restaurant and thereby exercised operational control and were employers).

       While admitting that Defendant Ly had unchecked control over Neo Sushi, Defendants dispute that he had any role managing, hiring or supervising employees or maintaining payroll records.  Even accepting this as true, Defendant Ly would still be Plaintiffs' employer.  In Herman, one owner was found to be an employer even where he did not hire any plaintiffs, supervised workers only sporadically, and did not maintain payroll records. Herman, 172 F.3d at 140.  Even if Defendant Ly was only responsible for financial aspects of Neo Sushi and the Third-Party Defendants were responsible for managing employees, Defendant Ly would still be an employer. Ahn v. Inkwell Publ. Solutions, Inc., 10 CIV. 8726 KNF, 2012 WL 1059679, at *2 (S.D.N.Y. March 29, 2012)(Fox, M.J.)(both partners were joint employers even though they split the responsibilities with one  "overseeing financial matters, and [the other] managing [the] staff.").

       *         *         *

       Accordingly, Defendant Ly's operational control over Neo Sushi renders him Plaintiffs' employer under the FLSA and jointly and severally liable to Plaintiffs.

b.  <u>Defendant Ly had Direct Control Over Plaintiffs</u>

### a.  <u>Defendant Ly had the Authority to Hire and Fire Employees</u>

Even reviewing the <u>Herman</u> factors in isolation, Defendant Ly controlled employees, including Plaintiffs, and was their employer.  First, Defendant Ly had the authority to hire and fire employees.  Plaintiffs and Third-Party Defendant Chang will testify that Defendant Ly invited Michele Chan to work at Neo Sushi and had to approve employee salaries.   In addition, Defendant Ly admits that he alone had control over Neo Sushi's finances and had the authority to hire and fire individuals because he had the ability to pay those employees.  Finally, Defendant Ly unilaterally changed the locks to Neo Sushi and refused Plaintiff May Chan's pleas to return to work, thereby terminating her employment.   Accordingly, Defendant Ly had the authority to hire and fire employees.  <u>Chen v. TYT E. Corp.</u>, 10 CIV. 5288 PAC, 2012 WL 5871617, at *5 (S.D.N.Y. March 21, 2012)(Crotty, J.)(finding an owner a joint employer when it paid employee wages and closed the restaurant).

### b.  <u>Defendant Ly Supervised Employees and Set Their Schedules</u>

Second, although Defendant Ly has denied that he supervised any employees or set employee schedules, Plaintiffs and Third-Party Defendants will testify that he supervised employees and set their schedules.  Plaintiff Michele Chan will testify that Defendant Ly gave her work instructions at least once a week, including directing her to make deliveries and purchase supplies.  She will also testify that Defendant Ly directed her to fill out timesheets on occasions.  Plaintiff May Chan will testify that Defendant Ly set her schedule and gave her work instructions.  As such, Defendant Ly supervised Plaintiffs and set their schedules.

In addition, Defendant Ly admits that he worked at Neo Sushi virtually every day in the main dining room.  Given Defendant Ly's decades-long work history as a waiter, captain, and manager of restaurants, it is inconceivable that he never provided even sporadic instructions to Neo Sushi's employees (which is all <u>Herman</u> requires).  <u>Herman</u>, 172 F.3d at 140 (exercising supervision "on occasion" is sufficient).

### c.  <u>Defendant Ly Established the Rate and Method of Plaintiffs' Compensation</u>

Third, Defendant Ly set the rate and method of Plaintiffs' compensation. Defendant Ly had the sole authority to pay Plaintiffs.  <u>Herman</u>,172 F.3d at 140 ("key question is whether [individual] had the authority to sign paychecks throughout the relevant period").  In addition, Third-Party Defendant Chang will testify that Defendant Ly had to approve employees' salaries.  Defendant Ly decided whether to pay employees in cash or by check and actually remitted pay to employees.  Finally, Defendant Ly testified that he instructed the Third-Party Defendants to set up a payroll system.  Accordingly, Defendant Ly decided the rate and method of payment.

### d.  <u>Plaintiff Ly Maintained Neo Sushi's Limited and Inaccurate Payroll Records</u>

Finally, to the limited extent that Defendants maintained any employment records, Defendant Ly helped maintain those records.  Plaintiffs and Third-Party Defendants will testify that Defendant Ly filled out Defendants' inaccurate timesheets.  In addition, Defendant Ly kept records of the few paychecks he provided to employees.  To the extent any records were maintained, Defendant Ly was the one doing so.

*                              *                              *

13

The record will show that Defendant Ly was an owner and officer of Neo Sushi, had operational control of Neo Sushi, had the authority to hire and fire employees, supervised Plaintiffs, set their rate of compensation and paid them (albeit only once), and maintained the inaccurate and incomplete payroll records that Defendants maintained.  Accordingly, Defendant Ly is an employer under the FLSA and jointly and severally liable to Plaintiffs.[4]

## B.  PLAINTIFFS ARE COVERED EMPLOYEES UNDER THE FLSA

Throughout this litigation, Defendants have argued that the FLSA does not apply to Defendants because they did not earn $500,000 annually.  An employer is subject to the FLSA if it is an "enterprise engaged in commerce or in the production of goods for commerce."  Kaur v. Royal Arcadia Palace, Inc., 643 F. Supp. 2d 276, 291 (E.D.N.Y. 2007) citing 29 U.S.C. §§ 203(s)(1).  To be an enterprise engaged in commerce, an employer's annual "gross volume of sales made or business done must not be less than $500,000 annually." Id.  Plaintiffs concede that Defendants did not satisfy enterprise coverage because they did not appear to earn $125,000 during the first quarter of operation. 29 C.F.R. § 779.269 (stating that for a new business "the first quarter year in which it has been in operation will be taken as representative of its annual dollar volume.")

---

[4] This case is readily distinguishable from the rare cases such as Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253 (S.D.N.Y. 2011) where the court held that the owner and officer was not an employer under the FLSA.  In Copantitla, the owner and officer visited the restaurant once a week as a patron, made nonbinding recommendations to the general manager, and received reports.  Unlike Defendant Ly, she did not work in the restaurant every day, have absolute control over the bank account and credit card, run the restaurant, pay employees' salaries, pay the restaurant's bills or meet with the restaurant's accountant.  Nor did she authorize the hiring of employees, provide instructions to employees, maintain employee records or pay employees.  Copantitla is therefore easily distinguishable.

14

But even if the employer does not qualify as an enterprise, individual employees may be covered under the FLSA if they are "engaged in commerce or in the production of goods for commerce." Owusu v. Corona Tire Shop, Inc., 09-CV-3744 NGG JO, 2010 WL 4791629, at *2 (E.D.N.Y. November 17, 2010).  Employees who regularly engage in credit card transactions are covered employees under the FLSA. Opinion Letter Fair Labor Standards Act (FLSA), 1999 WL 1002373 (March 5, 1999).[5]  Both Plaintiffs May Chan and Michele Chan regularly swiped credit cards as part of their job duties.  Michele Chan was employed a cashier and her primary duty was to swipe credit cards.  May Chan swiped credit cards when Michele Chan was busy and took over Michele Chan's credit card swiping duties after Michele Chan stopped working for Neo Sushi on October 6, 2011.  Accordingly, Plaintiffs are covered by the FLSA.

Defendants argue in their pretrial brief for the first time that Plaintiffs never pled in their Second Amended Complaint that they were individually engaged in commerce.  That is not correct (Second Amended Complaint, at ¶¶58, 69) and the Court noted as such in its November 15, 2012 order (DE 24).  Defendants also argue that the "seminal" case of Russell v. Cont'l Rest., Inc., 430 F. Supp. 2d 521 (D. Md. 2006) precludes individual coverage.   In contrast to this case, however, in Russell the waitresses did not swipe credit cards as part of their regular duties. Id. at 526 (noting that waitresses did not regularly process credit cards).  Here, however, both Plaintiffs swiped credit cards as part of their regular duties.

\*                          \*                          \*

Accordingly, Plaintiffs have established that they are individually covered by the FLSA.

---

[5] While agency opinion letters are not entitled to Chevron deference, they are "entitled to respect."  Christensen v. Harris Cnty., 529 U.S. 576, 587, 120 S. Ct. 1655, 1663, 146 L. Ed. 2d 621 (U.S. 2000).

## C. PLAINTIFFS ARE ENTITLED TO A LOWER BURDEN OF PROOF AT TRIAL

Defendants did not keep proper records under the FLSA and NYLL and Plaintiffs are therefore entitled to a lower burden of proof at trial.  Where an employer fails to keep proper records, the solution is not to penalize the employee. Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011).  Rather,

> [i]n such a situation ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Id. quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S. Ct. 1187, 1192, 90 L. Ed. 1515 (1946).  An employee may satisfy this lower burden through the recollection of her hours alone.  Id.

Here, it is undisputed that Defendants failed to keep proper records.  Although Defendants have produced in discovery what purport to be timesheets for some of the periods during which Plaintiffs worked, Defendant Ly testified that he had no idea whether those timesheets are accurate and Plaintiffs and Third-Party Defendants have denied in large part the accuracy of the timesheets.  In addition, Defendants have failed to produce any pay records aside from a single check to Plaintiff May Chan.  Defendants did not produce records of "wages, hours, and other conditions and practices of employment maintained by [them]." 29 U.S.C. § 211.  Nor did they produce records of the tips that Plaintiff May Chan received.  Accordingly,

16

Plaintiffs are entitled to a lower burden of proof under the FLSA at trial, one that they can meet solely based on their recollection.

Under NYLL, employers that fail to keep records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." Jemine v. Dennis, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012) citing NYLL 196-a.   Rather than simply reducing the employees' burden of proof like under the FLSA, under the NYLL the burden is shifted to the employer to prove the employee was paid properly.  Given Defendant Ly's testimony that he did not supervise Plaintiffs or set their pay, Defendant Ly will be unable to satisfy his burden under the NYLL.

### D.  PLAINTIFFS ARE ENTITLED TO DAMAGES FOR THEIR CLAIMS

   a.   Defendants Failed to Pay Plaintiffs Minimum Wages Under the FLSA and NYLL

Both the FLSA and NYLL required that Defendants pay Plaintiffs no less than $7.25 for each hour worked.  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012); 29 U.S.C. § 206(a)(1), NYLL § 653.  Plaintiff May Chan worked approximately 48.5 hours a week and was paid a total of $664.70 in wages during the entire period of her employment, or approximately $38.16 for each of the approximately 18 weeks she worked. Plaintiff May Chan was therefore paid less than $1 an hour, well below the minimum wage.

   b.   Defendants Failed to Pay Plaintiffs Overtime Wages Under the FLSA and NYLL

Additionally, the FLSA and NYLL also require that all employees who work more than 40 hours a week be paid time-and-a-half for their overtime hours.  Gunawan, 897 F. Supp. 2d at 90; 29 C.F.R. § 778.105; 12 NYCRR § 146–1.4.  Accordingly, Defendants were

obligated to pay Plaintiff May Chan $10.88 an hour for each of her overtime hours, which they failed to do.

Plaintiff Michele Chan worked approximately 54 hours each week and was paid nothing for any of those hours.  Plaintiff Michele Chan was promised a salary of $700 a week, and "[t]here is a rebuttable presumption that a weekly salary covers 40 hours."  Wing Kwong Ho v. Target Const. of NY, Corp., 2011 WL 1131510, at *15.  Michele Chan is therefore entitled to an overtime rate of $26.25 ($700/40*1.5).

    c.    <u>Defendants Failed to Pay Plaintiff Michele Chan Her Promised Wages Under NYLL §191</u>

Plaintiff Michele Chan is entitled to her promised wages under NYLL **§**191.  Michele Chan will testify that upon her hiring Defendants promised her $2,800 a month, or approximately $700 a week but did not pay her anything at all.  Michele Chan is therefore entitled to $700 per week.  Wing Kwong Ho v. Target Const. of NY, Corp., 08-CV-4750 KAM RER, 2011 WL 1131510, at *14 (E.D.N.Y. March 28, 2011)(holding that an employee who was promised wages is entitled to those wages, plus liquidated damages, interest, and attorneys' fees and costs).[6]

---

[6] If the Court finds for Plaintiff Michele Chan on this claim and awards her $700 a week, she will not claim minimum wage violations under the FLSA and NYLL, which would amount to less than $700 a week.  Wing Kwong Ho, 08-CV-4750 KAM RER, 2011 WL 1131510, at *14 (holding that employee could not claim untimely payment of wages and minimum wages for the same week).

   d. <u>Defendants Failed to Provide Plaintiffs Michele and May Chan Proper</u>
     <u>Wage Notices Under NYLL § 195(1) or Proper Wage Statements</u>
     <u>Under NYLL § 195(3)</u>

   Both Plaintiffs have claims for Defendants' failure to provide them with a wage notice under NYLL § 195(1) and a wage statement that reflects their hourly rate and hours worked under NYLL §195(3).  Under § 195(1), an employer must:

> "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

   Under NYLL § 198(1-b), "if any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section one hundred ninety-five of this article, he or she may recover in a civil action damages of fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of two thousand five hundred dollars, together with costs and reasonable attorney's fees."

   Defendants failed to provide Plaintiffs Michele or May Chan with proper wage notices and therefore are in violation of NYLL § 195(1).

   Similarly, pursuant to NYLL § 195(3), an employer must:

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of

employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate.

An employer who fails to provide such a wage statement must pay the employee "one hundred dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars, together with costs and reasonable attorney's fees." NYLL §198(1-d).

Defendants failed to provide Plaintiffs any paystubs, never mind paystubs in compliance with NYLL § 195(3).

      *                         *                         *

Accordingly, Defendants violated NYLL §§ 195(1) and 195(3) and Plaintiffs are entitled to damages pursuant to NYLL §198(1).

      e.   Defendants Improperly Misappropriated Plaintiff May Chan's Tips

Defendants also misappropriated Plaintiff May Chan's tips.  Under NYLL 196-d, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  An

employee is entitled to recover the tips unlawfully withheld by the employer. <u>Gunawan,</u> 897 F. Supp. 2d at 90.  Here, Defendants admit that Defendant Ly retained tips from the tip pool and provided tips to the Third-Party Defendants (who Defendants allege were managers).  That practice was illegal.  <u>Fowler v. Scores Holding Co., Inc.,</u> 677 F. Supp. 2d 673, 684 (S.D.N.Y. 2009)(unlawful to provide employee's tips to managers).

### f.   Defendants Retaliated Against Plaintiff May Chan

Plaintiff May Chan also suffered retaliation under NYLL § 215.  Plaintiff May Chan will testify at trial that she complained to Third-Party Defendant Chang and Defendant Ly about not being paid her wages, and Plaintiff Michele Chan will testify that that she spoke directly to Defendant Ly about not being paid.  Third-Party Defendant Chang will also testify that he received numerous and repeated complaints from employees about not being paid, which he conveyed to Defendant Ly.  In response to these repeated complaints about Defendants' failure to properly pay employees, Defendant Ly closed Neo Sushi and prevented the Third-Party Defendants, May Chan, and the other employees from returning to work.  These acts were retaliatory under NYLL § 215, which makes it unlawful for an employer to terminate an employee for complaining about not being paid proper wages.  <u>Paz v. Piedra</u>, 09 CIV. 03977 LAK, 2012 WL 121103, *10 (S.D.N.Y. January 12, 2012).[7]

An employee who suffered retaliation under the NYLL is entitled to backpay, punitive damages for emotional distress, and liquidated damages of up to $10,000.  <u>Ting Yao Lin v. Hayashi Ya II, Inc.,</u> 08 CIV.6071(SAS)(AJP), 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30,

---

[7] Normally once the employee makes out a prima facie case, the employer has the opportunity to provide a non-discriminatory business reason for termination.  Here, however, Defendant Ly testified that Plaintiff May Chan quit and obviously can proffer no such reason for her termination.

2009)(plaintiff entitled to $5,000 in punitive damages for emotional distress);  Paz, 09 CIV. 03977 LAK, 2012 WL 121103, at *13 (entitled to compensatory damages and up to $10,000 for liquidated damages).  Accordingly, Plaintiff May Chan is entitled to backpay, liquidated damages, and punitive damages.

g.  Liquidated Damages For Unpaid Wages, Misappropriation of Tips, and Untimely Payment of Wages

Plaintiffs are each entitled to liquidated damages under the FLSA and NYLL for their unpaid minimum wage and overtime claim.  Both the FLSA and NYLL entitle Plaintiffs Michele Chan and May Chan to liquidated damages at 100% of their regular damages. Angamarca v. Pita Grill 7 Inc., 11 CIV. 7777 JGK JLC, 2012 WL 3578781, at *7 (S.D.N.Y. August 2, 2012).  In addition, "majority of cases allow for simultaneous recovery" of liquidated damages under the FLSA and NYLL.  Id.  Accordingly, Plaintiffs are entitled to liquidated damages of 100% under both the FLSA and NYLL.

Plaintiff May Chan is also entitled to liquidated damages under the NYLL for her tip misappropriation claim under NYLL § 196-a.   Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 08 CIV. 3725 DC, 2010 WL 4159391, at *6 (S.D.N.Y. September 30, 2010).  Similarly, Plaintiff Michele Chan is entitled to liquidated damages for her claim under NYLL § 191 for untimely payment of wages. Wing Kwong Ho, 08-CV-4750 KAM RER, 2011 WL 1131510, at *14.

*                              *                              *

We thank the Court for its attention to this matter.

Dated: New York, New York
      June 7, 2013

                             Respectfully submitted,

                                /s/
                             Liane Fisher (LF-5708)
                             Counsel for Plaintiffs

                                /s/
                             Michael Taubenfeld (MT-4640)
                             Counsel for Plaintiffs